**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **CECIL HUTCHINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CAFN:** |
| | ) | |
| **CITY OF SOUTH FULTON,** | ) | |
| | ) | |
| **AND** | ) | |
| | ) | |
| **CEDRIC ALEXANDER** | ) | |
| **In their individual capacity** | ) | |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) | |

## <u>COMPLAINT</u>

Plaintiff, Cecil Hutchins, files this Complaint against City of South Fulton and Cedric Alexander in his individual capacity to recover all permissible damages under controlling law, including under Georgia Whistleblower Act, Promissory Estoppel, First Amendment Retaliation.

## <u>INTRODUCTION</u>

Plaintiff, Cecil Hutchins, brings this action against Defendant City of South Fulton and Defendant Cedric Alexander, in his individual capacity, arising from retaliation connected to Plaintiff's participation in investigations involving alleged

governmental misconduct, corruption, theft of public funds, and misconduct involving City officials and employees.

During his employment with the South Fulton Police Department, Plaintiff participated in and assisted with investigations involving allegations of corruption, theft of public funds, obstruction of justice, and misconduct involving City officials and employees. Following Plaintiff's involvement in those matters, Plaintiff was subjected to adverse employment actions, interference with his duties, intimidation, retaliation, and ultimately constructive discharge.

As a result of Defendants' conduct, Plaintiff seeks all damages and relief permitted under applicable law.

## JURISDICTION AND VENUE

1.

Jurisdiction is proper under 28 U.S.C. **§** 1331 and 1343(a)(4). And, venue is proper under 28 U.S.C. **§** 1391(b) and L.R. 3.1(B)(3) because (1) a substantial part of the events and omissions giving rise to Mr. Hutchins claims occurred within this District and Division and (2) Defendants reside and transact business in this District and Division.

## PARTIES

2.

Plaintiff Cecil Hutchins ("Plaintiff" or "Hutchins") is a resident of the State of Georgia and was, at all times relevant to this Complaint, employed by the South Fulton Police Department as a sworn peace officer and detective.

3.

Defendant City of South Fulton ("City" or "South Fulton") is a municipal corporation organized and existing under the laws of the State of Georgia and may be served through its authorized agent for service of process.

4.

Defendant Cedric Alexander ("Alexander") was, at all times relevant to this Complaint, the Public Safety Director for the South Fulton Police Department and acted under color of state law. Alexander is sued in his individual capacity for actions taken under color of law and within the scope of his authority.

## STATEMENT OF FACTS

### A. About Mr. Hutchins

5.

Born in Atlanta, GA, and raised by his mother, who worked for the U.S. Postal Service. Because his mother advanced in the Postal Service, Mr. Hutchins moved around a lot, eventually graduating from High School in North Carolina.

6.

Mr. Hutchins graduated High School with a golf scholarship to Livingstone College, in Salisbury, North Carolina; However, Mr. Hutchins left Livingstone College to pursue his dream of becoming a pro golfer, going on mini pro tour for five years. While on tour, Mr. Hutchins lived in Decatur, Georgia.

7.

After being on mini pro tour for five years, Mr. Hutchins worked for the U.S. Postal Service as a mail carrier for two years.

8.

Mr. Hutchins left the Postal Service to become a law enforcement officer in Georgia.

B. Mr. Hutchins become a Georgia Peace Officer

9.

Mr. Hutchins started his law enforcement career with South Fulton Police Department as a police recruit, in 2022, and graduated from mandate training at North Central in Cobb County, in 2022.

10.

After graduating from mandate training, Mr. Hutchins spent a year of SFPD Patrol; then Officer Hutchins was promoted to corporal.

11.

After becoming corporal, then Chief Meadows put Hutchins in charge of starting up the Gun Unit (now known as NIBIN Unit). While in this unit, Hutchins became the first officer to secure a lead on a criminal suspect by understanding complex data regarding shell casing analysis to identify criminal suspects.

12.

Because of his success on the NIBIN unit, then Chief Meadows moved Hutchins to the Dignitary Protection/Corruption unit, in March 2025, and while in this unit, Hutchins was promoted to detective.

**C. Detective Hutchins starts the corruption investigation that eventually led to his termination**

13.

Approximately, in June 2025, Chief Meadows placed Hutchins in charge of an investigation in which allegations of stealing money were made against City of South Fulton Employees.

14.

Detective Hutchins began interviewing witnesses regarding said investigation; one witness implicated Hal Moon.

15.

Moon eventually admitted to the allegations while also implicating "bigger fish," and subsequently provided information multiple City Officials who appeared

to be involved with stealing money from various city funds. In total there were six CSF Employees and one former employee who Detective Hutchins was investigating for theft of money and falsifying government records to facilitate the theft of said funds. At this point, only then Chief Meadows and the City Manager, Sharon Subadon, knew about the investigation.

D. **Hutchins investigation was revealed to the entire City Council in an executive meeting**

16.

In July 2025, the City Manager tipped off the entire City Council to the Detective Hutchins investigation in an executive session, as evidenced by text messages from one City Councilmember, Keosha Bell, to Hal Moon--prior to even arresting him. City Councilwoman Bell also told Hal Moon about a woman who informed on him and Moon confirmed the woman informant was Tangela Mott. The entire investigation was blown wide open, exposing all suspects and Detective Hutchins informant at the time.

17.

After the City Manager and City Councilwoman Keosha Bell blew the cover off the entire investigation, the City Manager stopped Detective Hutchins from taking warrants against Keosha Bell for obstruction of justice.

18.

Neither City Councilwoman Bell or the City Manager ever faced discipline for these egregious actions.

E. **Corruption gets worse for another officer who sued the City**

19.

Because Detective Hutchins worked in the corruption unit, his major instructed Detective Hutchins to investigate officers in SFPD's Internal Affairs Department because of allegations made in an lawsuit, by SFPD Officer Pserda Dickerson, about his IA file being intentionally discarded by SFPD internal affairs' office.

20.

Detective Hutchins performed an undercover cooperation at midnight on August 7, 2025, performing a security sweep, and that is when Detective Hutchins and his team documented the fact that all file cabinets were locked and thus only SFPD officers who would have access to , for example, Dicker's IA file were current IA staff or former IA staff who had a key. Consequently, Detective Hutchins wrote a report on his findings and based on those finding Major Kalaimai ordered Detective Hutchins to begin interviewing IA staff.

21.

Prior to interviewing the IA staff for corruption, Deputy Chief shut down the entire investigation.

F. **Detective Hutchins moves back to the stolen money investigation after the IA investigation was shut down**

24.

On August 12, 2025 Detective Hutchins, Detective Terrence Brown and Detective Willie Salls met with the City Manager, Deputy Chief Eddie Smith, The City Attorney, and Reginald McClendon (Director of Community Development & Regulatory Affairs), and in this meeting Detective Hutchins told all attendees about the missing money case, the employees whom they felt were guilty and that the case was with the FBI; moreover, Detective Hutchins in this meeting ask for all financial audits for the Tree Trust Fund and audits related to security bonds. The City never turned over this information.

25.

On August 25, Detective Hutchins, Detective Terrence Brown and Detective Willie Salls, Major Kalaimai, and Cedric Alexander (SFPD's Public Safety Director) met with the FBI at FI Headquarters in Atlanta, Special Agent Josh Berrios and his supervisor.

26.

Relevantly, Cedric Alexander replaced Chief Meadows as the top authority for SFPD and at all times relevant to this Complaint held that position.

27.

Within two week, Cedric Alexander kicked everyone off the Corruption Unit, but Detective Hutchins; Alexander told Hutchins to "chill out" and encourage him to take vacation time and to keep him informed about eh FBI investigation.

28.

On September 14, Hutchins received an email from Captain Espirit, who is Alexander's assistant, requesting Hutchins to unlock his FBI case and another case, so that allegedly GCIC (Robyn Bryant) could fix an error code. This alleged error code was not related to the FBI case at all and there was no need to unlock the FBI file. Significantly, before Hutchins could provide access, SFPD locked him out of the FBI files and he never regained access to the FBI files for his own investigation.

29.

Also on September 14, 2026 Alexander denied career advancing training that Alexander had previously encouraged Detective Hutchins to take such Detective CID trainings.

30.

On September 29, 2026, Alexander took away Detective Hutchins take home vehicle which was 2023 Tahoe fully equipped with lights and sirens. Afterwards, Detective Hutchins was given a Jeep Cherokee with no police equipment at all including no lights, sires, or internet.

31.

On October 7, 2026 Alexander officially disbanded the entire corruption unit by kicking Detective Hutchins out and telling him to find a different role withing the Department.

32.

On October 9, 2026 Detective Hutchins was informed that he shall appear before internal affairs, and thus Hutchins asked Alexander about this issue. Alexander played dumb even though he was copied on the very email that informed Hutchins that he must report to Internal Affairs.

33.

On October 14, 2025, Hutchins reported to IA, where he was informed that a two-year old investigation, that had been closed as unfounded, was now being re-opened per “upper command.” Suddenly, according to upper command, the closed investigation, with a finding of unfounded, had allegedly not been properly investigated.

34.

On October 16, 2026, Alexander called Hutchins, demanding that he disclose confidential information about the FBI investigation to Sylvie Moses who was a human resource employee for the City and had no privilege/authority to know said confidential information; Significantly, Detective Hutchins refused to comply with Director Alexander's demand.

35.

On October 21, 2026, Hutchins developed stress hives from all the unlawful retaliation and thus went to urgent care where he received steroid treatment. Hutchins also resumes EAP with counseling regarding sleep disruption and lack of focus.

36.

On November 29, 2025 Hutchins was told he had to resubmit he request for uniform allotment because SFPD claimed that the paperwork was never received—even though every other officer had gotten their uniform allotment.

37.

On December 3, 2025, Alexnader stripped Hutchins of his take home vehicle and thus made him drive his person vehicle.

38.

Notably, Alexander was obsessed with retaliating against Hutchins, and during every command staff meeting, according to one reputable source, Alexnader inquired about Hutchins whereabouts and activities at every meeting, which occurred at least once a week.

39.

December 10, 2025, Hutchins found out that a former SFPD Officer had contacted a media source claiming to know that Hutchins was being investigated by Internal Affairs for failure to be truthful related to a two-year old, closed invitation that had a finding of unfound. Relevantly, IA investigation are confidential and absolutely no former employee should have information about an on-going IA investigation. However, the former employee is known to he a good friend of the IA Captain, Tanisha Reynolds.

40.

On December 11, 2025, Hutchins was summarily transferred, without explanation, to CID (effective December 26, 2025) **after** expressly stating that he did not want to work under the CID Major, Major Bryant (former Pritchett) because of a previous conflict.

41.

On December 16, 2025, Director Alexander's assistant called Hutchins to inform him that he should think about resigning because if he did not, he would be terminated.

42.

On December 20, 2025, Hutchins went on leave under the Family Medical Leave Act, and while on FMLA, on December 22, 2025, Internal Affairs called Hutchins, requesting him to meet with an IA representative. Hutchins had not heard a word from them since meeting with them on October 14, 2025.

43.

While on FMLA, the Defendant literally demoted Hutchins from Detective to Police Officer II—for zero lawful reasons-as evidenced by the daily activity sheets starting on January 7, 2025 onward.

44.

Suffering from stress hives, PTSD, sleep deprivation, lack of focus, isolation, depression, and a demotion—Hutchins involuntarily resigned on February 9, 2026.

**COUNT I**

**<u>42 U.S.C § 1983--FIRST AMENDMENT RETALIATION</u>**
(*Against Defendant Alexander*)

45.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1-36, and any other facts this Court deems relevant, as if fully stated herein to support all allegations made in this Count.

46.

Plaintiff engaged in protected activity by participating in and reporting investigations involving alleged governmental corruption, theft of public funds, obstruction of justice, and misconduct involving City officials and employees, all matters of public concern.

47.

Because of Defendants' retaliation, Hutchins is entitled to all permissible damages under law, including equitable relief.

**COUNT II**

**<u>VIOLATION OF THE GEORGIA WHISTLEBLOWER'S ACT</u>**

(*Against City of South Fulton*)

48.

Plaintiff now fully incorporates the facts and assertions found in paragraphs

3-7, 37-47, and any other facts this Court deems relevant, as if fully stated herein to support all allegations made in this Count.

49.

Defendant City of South Fulton was, at all times relevant to this action, Hutchins employer and was a public employer as defined by the Georgia Whistleblower's Act.

50.

Hutchins was, at all times relevant to this action, a public employee.

51.

Based on the incorporating facts to support this Count, the City of South Fulton took adverse action against Hutchins by adversely affecting the compensation, terms, conditions, and privileges of his employment in retaliation for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency.

52.

City of South Fulton violated the Georgia Whistleblower's Act by adopting or enforcing policy or practice preventing a public employee from disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency.

53.

City of South Fulton's actions were willful, wanton and intentionally directed to harm Hutchins.

54.

City of South Fulton's actions were reckless and taken in willful disregard of the probable consequences of its actions. As a result of City of South Fulton's conduct, Hutchins has suffered loss of wages and benefits, loss of stature with respect to his position in the community, has suffered damage to his professional reputation and suffered mental and emotional distress. City of South Fulton's actions and failures to act were the proximate cause of the harm suffered by Hutchins as alleged herein.

**Based on the facts alleged in this complaint,** Plaintiff is entitled to attorney fees under all applicable laws.

**WHEREFORE**, Mr. Hutchins prays for a trial by jury of twelve and judgment against Defendant as follows:

(a) The process issue and service be had on each Defendant;

(b) That judgment be granted in favor of the Plaintiff against the Defendants, jointly and severally, for the injuries of Plaintiff;

(c) That Plaintiff recover compensatory damages including pain and suffering in an amount to be determined at trial; special damages,

including lost income and future lost income, and other expenses in an amount no less than $500,000, and punitive damages;

(d) That Plaintiff recover all attorneys and costs of this litigation pursuant to all applicable laws;

(e) That a jury trial be had on all issues so triable; and

(f) That Plaintiff receives such other and further relief as the Court deems just and proper.

Respectfully submitted this May 28, 2026

**/s/ MARIO B. WILLIAMS**
Mario B. Williams
Ga. Bar No. 235254

HUMANITY DIGNITY AND RIGHTS LLC
Life Time Work - Buckhead - at Phipps Plaza
3480 Peachtree Road, NE, Second (2nd) Floor
Atlanta, Georgia 30326
Tel.: (470) 257-2485
Email: mwilliams@hdrattorneys.com
Counsel for Plaintiff